# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| BRYAN URQUHART,<br><br>                                Plaintiff,<br><br>v.<br><br>CORY ROESELER and ADVANCED<br>CORRECTIONAL HEALTHCARE, INC.<br><br>                              Defendants. | Case No. 18-CV-879-JPS<br><br><br><br>**ORDER** |

      Plaintiff filed his *pro se* complaint in this case on June 8, 2018. (Docket #1). He was permitted to proceed on an Eighth Amendment claim of deliberate indifference to a serious medical need against Sheboygan County Sheriff Cory Roeseler, in his official capacity, and Advanced Correctional Healthcare, Inc. ("ACH"). (Docket #8). Specifically, Plaintiff claims that he reported symptoms of a heart attack to correctional staff, nurses, and mental health providers at the Sheboygan County Detention Center while he was incarcerated there, but was told that he was not having a heart attack. *Id.* at 3–4. He claims that he was, in fact, having myocardial infarctions that went untreated until he was transferred to state prison. *Id.* at 4.

      Now before the Court are two motions filed by Plaintiff: a motion for the appointment of counsel (Plaintiff's second such motion) and a motion requesting that the Court review Plaintiff's medical records *in camera*. (Docket #29 and #30). Defendant ACH responded to Plaintiff's motion

regarding medical records, arguing that Plaintiff's request should be denied and asking that the Court compel Plaintiff to sign authorization forms allowing ACH to obtain his medical records. (Docket #31).

The Court begins with consideration of the motion for *in camera* review of Plaintiff's personal health records. (Docket #30). Defendant ACH has served on Plaintiff authorizations for the release of his health records, which include Plaintiff's psychological, behavioral, dental, and other medical records From June 2017 to the present. (Docket #31 at 1). ACH claims to need these records because they are necessary to the evaluation of Plaintiff's medical deliberate indifference claim. *Id.* at 1–2. Plaintiff objects to the breadth of the records ACH seeks; he believes only medical and optical records are relevant to this case. *Id.*; *see also* (Docket #29). ACH responds that all of Plaintiff's medical records are relevant to determine, for example, whether he had any pre-existing conditions that could mimic the symptoms of a heart attack. (Docket #31 at 2). Further, to the extent Plaintiff seeks to recover for any emotional or psychological distress, he has placed his mental health at issue. *Id.*

Plaintiff's motion for *in camera* review of his health records, (Docket #30), will be denied. His medical records are highly relevant to his claim in this case, both in terms of the claim's merit and the question of damages. *See Walton v. Hendrickson*, No. 17-CV-956-BBC, 2018 WL 5313917, at *1 (W.D. Wis. Oct. 26, 2018). Plaintiff cannot expect to recover for a claim of medical mistreatment without allowing ACH to review the available information concerning his medical condition, treatment, and injuries. There is no reason for the Court to view these records *in camera* before they are released to ACH. The Court will, therefore, order that Plaintiff provide signed

release forms for his health records to ACH for the period from June 2017 to the present. Failure to do so will result in dismissal of this case.

Next, on February 7, 2019, Plaintiff filed his second motion for appointment of counsel. (Docket #29). His first motion was denied without prejudice because he had not shown that he is incompetent to prosecute his case himself. (Docket #23 and #25). In his second motion, Plaintiff explains that a jailhouse lawyer from whom he received assistance at some point has been transferred to a different institution. (Docket #29 at 1). He also claims to have "memory retention issues" that developed after the incident alleged in his complaint and "other health concerns." *Id.* Plaintiff also expresses frustration that Defendants have requested medical record release authorization forms for what he believes are irrelevant records. *Id.* at 1–2. Finally, Plaintiff complains that lawyers for one of the defendants has not contacted him and he says he is "lost on procedure." *Id.* at 2.

Plaintiff's motion will be denied. As the Court explained in its order denying Plaintiff's first motion for appointed counsel, Plaintiff has no automatic right to court-appointed counsel in this civil case. *James v. Eli*, 889 F.3d 320, 326 (7th Cir. 2018). The Court will seek *pro bono* counsel to represent a plaintiff if he: (1) he has made reasonable attempts to secure counsel; and (2) "'the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it.'" *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc)); *see also* 28 U.S.C. § 1915(e)(1).

Plaintiff's request falters on the second *Pruitt* step: whether the difficulty of the case exceeds his capacity to coherently present it. This assessment must be made in light of the particular capabilities and

circumstances presented by each *pro se* litigant. *James*, 889 F.3d at 326–27. The Court of Appeals explains:

> The second step is itself grounded in a two-fold inquiry into both the difficulty of the plaintiff's claims and the plaintiff's competence to litigate those claims himself. The inquiries are necessarily intertwined; the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand. Ultimately, the question is not whether a lawyer would present the case more effectively than the pro se plaintiff; if that were the test, district judges would be required to request counsel for every indigent litigant. Rather, the question is whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself. Notably, this inquiry extends beyond the trial stage of the proceedings. The relevant concern is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty. This includes all of the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial.

*Id.* (citations and quotations omitted). While courts need not address every concern raised in a motion for appointment of counsel, they must address "those that bear directly" on the individual's litigation capacity. *McCaa v. Hamilton*, 893 F.3d 1027, 1032 (7th Cir. 2018).

The balancing contemplated in the second *Pruitt* step must also incorporate the reality that district courts cannot be expected to appoint counsel in circumstances which are common to all or many prisoners. *See Bracey v. Grondin*, 712 F.3d 1012, 1017–18 (7th Cir. 2013); *Pruitt*, 503 F.3d 647, 656 (observing that the Seventh Circuit has "resisted laying down categorical rules regarding recruitment of counsel in particular types of cases"); *Harper v. Bolton*, 57 F. Supp. 3d 889, 893 (N.D. Ill. 2014). Doing so

would place untenable burdens on court resources. It would also turn the discretion of Section 1915(e)(2) on its head, making appointment of counsel the rule rather than the exception.

Against this backdrop, the Court finds that Plaintiff has not presented sufficient evidence or argument showing that he cannot litigate this matter competently on his own. His claim that he is now without access to a jailhouse lawyer is not sufficient to warrant appointed counsel. First, even if this bald assertion is true, it does not appear to the Court that the quality of Plaintiff's filings has materially changed since Plaintiff lost his advisor's help. Plaintiff does not say exactly which filings were prepared with and without the help of a jailhouse lawyer (something he should have done if he expected to convince this Court to solicit a lawyer for him on this basis), but all of his filings appear to be of similar quality. Second, Plaintiff's argument about his jailhouse lawyer is premised solely on Plaintiff's belief that someone trained in the law would do a better job than he, which the Seventh Circuit has rejected as a reason for appointment of counsel. *Pruitt*, 503 F.3d at 655. Plaintiff's lack of legal training, while unfortunate, brings him in line with practically every other prisoner litigating in this Court. Moreover, it is worth pointing out that unlike a non-prisoner *pro se* litigant, who is generally a member of society with common demands upon his time like work and family obligations, prisoners like Plaintiff have more than sufficient discretionary time to attend to their litigation tasks and develop their cases. Perhaps prison conditions are not ideal for that work, but the time Plaintiff has available to do the work should considerably ease his burden.

As a litigant in this Court, Plaintiff is under an obligation to familiarize himself with the relevant legal standards and procedural rules. The Court assisted Plaintiff in this regard, as it does with all prisoner litigants, by providing copies of the most pertinent federal and local procedural rules along with its trial scheduling order. Thus, ignorance of the law or court procedure is generally not a qualifying reason for appointment of counsel. Moreover, Plaintiff's contention that he is "lost on procedure" has not, at this point in the case, been proven true. He has filed several motions seeking relief from the Court, and he responded to Defendants' discovery requests with objections. In other words, based on the information available to the Court, it does not appear that Plaintiff is struggling to understand or comply with the rules of procedure to a significant extent as compared to any other prisoner litigant.

Finally, Plaintiff's claimed lack of ability—relating to his legal novice and memory problems—is not supported by any proof. That is, Plaintiff has submitted no records or other evidence that he suffers from cognitive, behavioral, or other limitations affecting his ability to present his arguments in a cogent fashion. *See Henderson v. Ghosh*, 755 F.3d 559, 565 (7th Cir. 2014); *see also Walker v. Price*, 900 F.3d 933, 940 (7th Cir. 2018) (noting that courts should consider "any available evidence" of the prisoner's literacy, communication skills, education level, litigation experience, intellectual capacity, or psychological history). His filings to date suggest that he has no such limitation.

Plaintiff's arguments concerning his claims, his abilities, and his circumstances, whether considered separately or as a whole, do not convince the Court that counsel should be appointed to represent him at

this time. Thus, the Court will deny Plaintiff's motion for appointment of counsel.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for *in camera* review of his health records (Docket #30) be and the same is hereby **DENIED**. Within ten (10) days from the entry of this Order, Plaintiff shall produce to Defendant ACH signed authorization forms for the release of his health records from June 2017 to the present; and

**IT IS FURTHER ORDERED** that Plaintiff's second motion for appointment of counsel (Docket #29) be and the same is hereby **DENIED without prejudice**.

Dated at Milwaukee, Wisconsin, this 4th day of March, 2019.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge