# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

BRYAN URQUHART,

          Plaintiff,

v.

CORY ROESELER and ADVANCED CORRECTIONAL HEALTHCARE,

          Defendants.

Case No. 18-CV-879-JPS

**ORDER**

      Plaintiff, Bryan Urquhart, alleges that he suffered a heart attack while detained at the Sheboygan County Detention Center ("SCDC") in June 2017. (Docket #1 at 2–3). He complains that he did not receive adequate healthcare for this condition at SCDC, in large measure because he was seen by nurses rather than doctors. *Id.* Plaintiff maintains that he was properly attended to only once he was transferred to Dodge Correctional Institution. *Id.* at 3. Plaintiff's complaint states that he "is asking the courts to order a change in procedure" for the healthcare services at SCDC, in that he does not want nurses to be used as a buffer between the inmates and the physicians. *Id.* at 4. Plaintiff also requests monetary damages. *Id.*

      Nowhere in Plaintiff's complaint does he attempt to state a claim against any of the individuals directly responsible for his healthcare. *See generally id.* Instead, Plaintiff sues Defendant Cory Roeseler ("Roeseler"), the Sheboygan County Sheriff, and Advanced Correctional Healthcare ("ACH"), a private company contracted to provide medical services at SCDC. *Id.* at 1–2. Plaintiff was allowed to proceed against both defendants

on the theory that their policies and practices led to the violation of his Eighth Amendment right to adequate medical care. (Docket #8 at 5–6).[1]

The legal basis for this theory of liability originates from *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). There, the Supreme Court held that local government entities, such as municipalities and counties, cannot be held vicariously liable for constitutional violations committed by their employees. *Id.* at 690. Such entities can, nevertheless, be liable under Section 1983 if "the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009) (citing *Monell*, 436 U.S. at 690). Such a claim is colloquially referred to as a "*Monell*" claim. *Monell* claims may be leveled against private companies as well, if the company contracts to provide essential government services like inmate healthcare. *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014).

---

[1]Plaintiff never objected to the screening order's interpretation of his complaint as being restricted to these two policy claims, either in a separate motion or in any of his later filings. The only mention of a potential issue with the screening decision is found in one of Plaintiff's briefs in opposition to summary judgment, wherein he states: "'ACH asserts the only cause of action is a 'Monell' claim. Plaintiff believes the magistrate judge believed there is potentially other causes of action, and allows the Hon. Judge Stadtmueller will ultimately decide whether there is cause/causes." (Docket #53 at 2).

Plaintiff had ample time to object to the screening determination in this matter and chose not to. The summary judgment stage is far too late to take issue with screening concerns. In any event, Plaintiff's offhand musing about additional claims supplies no reasoned basis to alter the screening order.

Both Defendants have filed motions for summary judgment seeking dismissal of this action. (Docket #43 and #49). They deny that Plaintiff suffered any heart attacks or that the care provided to him was substandard. More important, however, is their contention that even if Plaintiff's constitutional rights were violated, he lacks evidence that the violation was caused by a policy of SCDC or ACH, as required for liability to attach under *Monell*.

Plaintiff's opposition to both of Defendants' summary judgment motions totals just thirty pages. (Docket #52 and #53). His submissions offer absolutely no evidence to support his policy claims under the second or third *Monell* variants. That is to say, Plaintiff supplies no proof that his treatment was the result of a consistent, though unauthorized, practice of ignoring inmates' medical needs. Indeed, he appears to expressly disclaim any desire to produce such evidence. *See* (Docket #53 at 5) ("Plaintiff asks, is it necessary to show multiple policy, practice or custom resulting in denial of medical treatment? One instance is 1 too many."). Plaintiff also fails to allege, or offer any evidence for, a theory that his alleged mistreatment was done at the hands of an official with final policy-making authority.

The Court is left, then, to assess whether Plaintiff could proceed to trial on the first variant of a *Monell* claim: an official policy adopted by Defendants that caused his constitutional rights to be violated. The policy at issue—using nurses to assess inmates in person and then pass along information to doctors—does appear to be an official policy. The problem for Plaintiff is that he cites no legal authority for the proposition that using nurses in a screening role violates the Eighth Amendment. To the contrary, Defendants note that such policies have consistently passed constitutional

muster. *See Gayton v. McCoy*, 593 F.3d 610, 622 (7th Cir. 2010) ("Although mandating a doctor's visit or constant prisoner checks would likely reduce the number of illness-related deaths or injuries, it is neither economically prudent nor feasible to put such policies in place."); *Adams v. Ingram*, No. 12-CV-162, 2015 WL 1256442 at *5 (S.D. Ill. Mar. 17, 2015) (the "common triage practice" of using nurses to screen complaints does not demonstrate deliberate indifference to their medical needs, as it "allows inmates to receive nurse-level medical treatment on demand but reserves higher level treatment for cases that nurses, in their medical judgment, believe require more medical expertise."); *Cook v. S. Health Partners*, No. 4:08CV-P128-M, 2009 WL 1409713 at *2 (W.D. Ken. May 20, 2009) ("A prisoner is entitled to medical care. This does not mean, however, that a prisoner is constitutionally entitled to see a doctor every time he wishes. In many instances, evaluation by a trained nurse prior to a doctor's examination may be sufficient medical treatment for the purposes of the Eighth Amendment. A nurse or physician's assistant may be able to effectively treat a prisoner without requiring a doctor's assistance. In this case, Southern Health Partners's policy did not deny Plaintiff all medical care in violation of the Eighth Amendment. Instead, Plaintiff simply alleges that the policy deprived him of the ability to receive the type of care he deemed necessary to treat his condition at that specific time. Mere disagreement with the nature of one's medical treatment is not sufficient, standing alone, to constitute deliberate indifference to a serious medical need.").[2]

---

[2]Defendants cited these and other decisions in their opening briefs. (Docket #45 at 14–15; Docket #50 at 11–13). Plaintiff entirely failed to respond to Defendants' arguments on this point, much less cite other, more persuasive cases. *See generally* (Docket #52 and #53). The Court could thus conclude that Plaintiff has waived any argument in opposition to Defendants' position. *Lee v. Ne. Ill. Reg'l*

Moreover, Plaintiff not only needs to establish that the nurse-screening policy was defective, but that Defendants were deliberately indifferent to the results of that defectiveness, namely that inmates were consistently receiving inadequate healthcare because of the policy. *Wilson v. Cook Cty.*, 742 F.3d 775, 781 (7th Cir. 2014). As noted above, Plaintiff supplies no evidence of this, other than his own single instance of allegedly improper care. In sum, regardless of the circumstances of Plaintiff's particular interaction with the nursing staff at SCDC, he has not created a triable issue as to whether the nurse-screening policy itself was the source of a putative violation of his constitutional rights.

Plaintiff has thus failed to support any theory of *Monell* liability against Defendants for their policy of nurse-screening. Defendants' motions for summary judgment must, therefore, be granted. The Court will also deny as moot a prior motion for judgment on the pleadings filed by Roeseler. (Docket #26).

Accordingly,

**IT IS ORDERED** that Defendants' motions for summary judgment (Docket #43 and #49) be and the same are hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Cory Roeseler's motion for judgment on the pleadings (Docket #26) be and the same is hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

---

*Commuter R.R. Corp.*, 912 F.3d 1049, 1053–54 (7th Cir. 2019) (failure to address an opposing party's argument acts as a concession of the argument).

Dated at Milwaukee, Wisconsin, this 11th day of September, 2019.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge